BALL v. SYKES.

1. **Evidence:** IMMATERIAL: INSTANCE. Plaintiff had testified that defendant had recognized his services in examining land titles, and had agreed to pay him therefor. To corroborate his testimony, he offered the deposition of a witness, who, after her attention had been called to a conversation between the parties, was asked the following question: "From their conversation with each other, had on that occasion, and from their conduct toward each other, did they act like gentlemen well acquainted with each other, or otherwise?" She answered: "The conduct of one toward the other was most cordial. They were talking about business matters, and I knew it was about lands." *Held* that the question called for immaterial evidence, and that a motion to exclude the interrogatory and answer as being immaterial should have been sustained.

2. **Agency:** STATEMENTS OF AGENT TO BIND PRINCIPAL. An agent cannot bind his principal by promises relating to matters not within the scope of his agency, and such promises are not admissible in evidence against the principal.

3. **Deposition:** CERTIFICATE OF OFFICER: WHAT IT MUST SHOW. Where the certificate of the officer before whom a deposition is taken fails to state that the deposition was read over to or by the witness before it was signed and sworn to by him, it is insufficient, (Code, § 3735,) and it should be excluded on motion. SEEVERS and REED, JJ., *dissenting.*

*Appeal from Lyon District Court.*

WEDNESDAY, DECEMBER 22.

ACTION to recover for services alleged to have been rendered for the defendant "in the examination of papers, abstracts, records and deeds relating to a large and valuable tract of land in Lyon county." There was a trial to a jury, and verdict and judgment were rendered for the plaintiff for $1,500. The defendant appeals.

*Hubbard & Spaulding*, for appellant.

*G. W. Argo*, for appellee.

ADAMS, CH. J.—The petition avers that the plaintiff was employed for the defendant, in the examination of the titles in question, by his agents, Close Bros. & Co., of Chicago. The defendant denies that Close Bros. & Co., were his agents in the matter, and denies that they had the authority to employ the plaintiff for him, and says that the attorney whom he employed in the matter, and upon whose opinion he relied, was one Richards. The fact appears to be that the defendant purchased the lands in question of Close Bros. & Co., who were either the vendors of the lands, or acted for the vendors, and the examinations made by the plaintiff were made at their request. The plaintiff, however, testified that, after the examinations were made, the defendant recognized the services as performed for him, and promised to pay for them. The defendant in his testimony denied such recognition and such promise. The plaintiff, for the purpose of corroborating himself, introduced certain evidence in his behalf, which was objected to by the defendant. The admission of the evidence, over the defendant's objection is assigned as error.

I. The plaintiff had testified that the conversation between him and the defendant, in which the latter agreed to pay him for the services, occurred at a hotel kept by one Mrs. Lamplough, and that she was present. Her deposition was taken by the plaintiff. After her attention had been called to the conversation between

1. EVIDENCE: immaterial: instance.

the plaintiff and defendant, she was asked a question in these words: "From their conversation with each other, had on that occasion, and from their conduct towards each other, did they act like gentlemen well acquainted with each other, or otherwise?" *Answer.* "The conduct of one towards the other was most cordial." The defendant moved to exclude the interrogatory and answer as immaterial, but the motion was overruled. The witness did not testify that she heard the defendant promise to pay the plaintiff, or heard the plaintiff make any claim for payment, or make any reference to any services rendered by him for the defendant. The fact, then, that the relation between the plaintiff and defendant appeared to the witness to be cordial did not, we think, have any tendency to prove the promise in question, or to support any issue in the case.

It is claimed, however, that the evidence that their relation appeared cordial had a tendency to disprove a fact testified to by the defendant. It is claimed in argument that the defendant testified that he never met Ball but once, as he remembers, and then was introduced in a formal manner, but had no conversation with him. But this is a perversion of the defendant's testimony. After testifying to an introduction to the plaintiff in the office of Close Bros. & Co., he proceeded to say: "I believe that I was casually introduced to Col. Ball, during my visit to Le Mars, by some one else, but where the introduction took place I can't recollect, but no matter of business was mentioned at that time, or ever mentioned, between Col. Ball and myself. I certainly did not have, at any time, any conversation with any one, in Col. Ball's presence, in regard to the titles to these lands." We see nothing in this inconsistent with what the witness took to be a cordial relation between the plaintiff and defendant. A large purchase had just been made by the defendant of lands in a country with which, as we infer from the evidence, the plaintiff was much more familiar than the defendant. That they should have much to say to each other in regard

to the country, and the price and prospects of lands, was, at least, natural; and a conversation deeply interesting to the parties might occur, even though the introduction was casual, as the witness said. In admitting the testimony of Mrs. Lamplough, that "the conduct of one towards the other was most cordial," we think that the court erred.

II. In answer to the same question, the witness said: "They were talking about business matters, and I know it was about lands." This, also, was objected to, and the objection was overruled. As the question called for immaterial evidence, and should have been excluded, the whole answer should have been excluded.

III. The plaintiff was allowed, against the objection of the defendant, to testify to a statement made by one Carter as binding upon the defendant. The admission of this evidence is assigned as error. The plaintiff's testimony was, in substance, that he met Carter at Milwaukee; that Carter was endeavoring to obtain a loan from an insurance company for the defendant, but was having some difficulty; that he applied to the plaintiff, and asked him to assist him, but the plaintiff declined, because the defendant had not paid him what he claimed he owed him; and that thereupon Carter said that, if the plaintiff would assist him, he should be paid out of the loan. The plaintiff claims that this statement by Carter bound the defendant, because Carter was the defendant's agent. We think that the evidence shows that Carter was the defendant's agent in some matters, but we are unable to find that he was clothed with any authority to pay the plaintiff, or to make any arrangement therefor. There was evidence tending to show that the defendant told the plaintiff that he was going to authorize Carter to pay him, but there is no evidence that he did so authorize him in fact, and the undisputed evidence is that he did not. We think that the court erred in admitting the plaintiff's testimony as to what Carter said.

*2. AGENCY: statement of agent to bind principal.*

IV. The plaintiff took the deposition of one Bennett. The defendant moved to exclude the deposition on the ground that the certificate of the commissioner was insufficient. The court overruled the motion, and the defendant assigns the ruling as error. The certificate is in these words: "I, John E. Ball, a commissioner of deeds for the state of Iowa, in and for the District of Columbia, do hereby certify that the deposition of Orson W. Bennett was sworn to and signed by the said deponent before me, and in my presence," etc. The objection urged is that the certificate does not show that the deposition, before it was signed and sworn to, was read over to or by the witness.

It is not denied, and could not be properly, that the statute contemplates that the deposition shall be read over to or by the witness before it is signed and sworn to by him. Code, § 3735. It is the duty of the officer taking a deposition to take it in the manner which the statute provides. He is appointed for that purpose. Confidence is reposed in his certificate. Courts take judicial notice of his signature, when attested by his seal. When the certificate shows that the statute has been followed, the deposition is admissible in evidence. The form of his certificate is not specifically prescribed. The only specific provision is as to the time and place of the completion of the deposition. The provision is that it must appear from the certificate that the deposition was subscribed and sworn to at the time and place mentioned in it. There being no other specific provision as to what the certificate shall contain, it is contended that it need show nothing more. But we do not think that this follows. It was necessary to provide specifically that the certificate should show the time and place of the completion of the deposition, because such necessity nowhere appeared from the general provisions in regard to the manner of taking the deposition. That the certificate should show that the general provision has been complied with is a matter of course. The return

3. DEPOSITION: certificate of officer: what it must show.

of any officer upon which a court is to act must show what the officer did, and, before a court can properly act upon his return, it must show that he has substantially complied with the law. This must be so in the very nature of the case. Now, no one doubts that it is the duty of the officer taking a deposition to see to it that the deposition is read over to or by the witness before it is subscribed and sworn to by him. Unless this is done, he cannot know what the deposition is. It is just as necessary that a deposition should be first read over to or by the witness as it is that it should be subscribed and sworn to by him. No other deposition can be relied upon as containing what the witness intended to say, and no deposition not so taken is admissible. Yet, ordinarily, there would be no evidence to show that the statute has been complied with but the certificate of the officer. The question involved is one of great practical importance. If the certificate need not show that the deposition was read over as the statute requires, we may presume that it would often be neglected, and the door would be opened for frauds and mistakes.

The plaintiff's theory is that the provision of the statute is merely for the protection of the witness, who must see to it, at his peril, that he knows what he is signing and swearing to. In our opinion, this provision is not alone for the protection of the witness, but of the party also against whom the deposition is taken. It would be no sufficient remedy for the party who had been made the victim of false testimony that the witness might be convicted and punished for perjury. We think that the deposition should have been excluded.

Some other questions are argued, but, as they may not arise upon another trial, we omit to consider them.

REVERSED.

SEEVERS, J., *dissenting*—In my judgment, the officer's certificate to the deposition referred to in the foregoing opin-

ion contains all the statute requires it should, and that the court cannot properly add to or take anything from the statute. The provision as to reading the deposition to the witness is merely directory, and the statute does not require such fact to be stated in the certificate. It should be presumed that the officer did his duty, and read the deposition to the witness before he swore to it.

REED, J., unites in this dissent.